IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **TOREY FITZGERALD, KENNETH MCCOY, and ALAN MOORE**, individually and on behalf of all others similarly situated, | Civil Action No. 2:17-cv-02251 |
| Plaintiff, | **DISTRICT JUDGE MAYS** |
| v. | **MAGISTRATE JUDGE CLAXTON** |
| **P.L. MARKETING, INC.,** | |
| Defendant. | |

**UNOPPOSED MOTION FOR APPROVAL OF SERVICE PAYMENTS, ATTORNEY'S FEES, AND COSTS FROM CLASS AND COLLECTIVE ACTION SETTLEMENT**

Plaintiffs Torey Fitzgerald ("Representative Plaintiff," or "Plaintiff Fitzgerald"), Kenneth McCoy ("Kentucky Class Plaintiff" or "Plaintiff McCoy"), and Alan Moore ("Ohio Class Plaintiff" or "Plaintiff Moore"), have moved the Court via unopposed motion for final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiffs and Defendant pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). Because the settlement involves payment of attorney's fees, costs, and service payments from a common fund, Plaintiffs also request approval of the settlement's payment of attorney's fees, costs, and service payments under Fed. R. Civ. P. 23(e) and 54(d)(2). The Settlement Agreement provides for service payments to the Representative Plaintiff in the amount of ▮▮▮▮ and the Kentucky Class Plaintiff and Ohio Class Plaintiff in the amounts of ▮▮▮▮ each (Settlement Agreement [ECF No. 88-1] ("Settlement Agreement"), ¶ 8), Settlement Administrator costs billed by RG/2 Claims ("Settlement Administrator") at the capped amount of ▮▮▮▮ (Settlement Agreement, ¶¶ 7, 9), and Class Counsel's attorney's fees and costs in the amount of one-third (33 1/3%) of the Gross Settlement Fund created for the common benefit of the Settlement Class Members (Settlement Agreement, ¶ 7).

1

Defendants do not oppose this request for approval of payment of the service payments, attorney's fees and costs, and Settlement Administrator's expenses from the Settlement Fund. The Court-approved Notices that the Settlement Administrator distributed by mail and email informed Class Members that Plaintiffs would seek approval of service payments, Settlement Administrator costs, and attorney's fees and costs to be paid from this settlement – including by listing the specific amounts for each. There have been no objections, timely filed or otherwise. There have been no requests for exclusion from this settlement. CAFA notices were served more than 90 days prior to the Final Approval Hearing, and there have been no objections from any government officials in response to those CAFA notices. Moreover, the Court has preliminarily approved the requested payments for notice and settlement administrator fees, expert fees, service payments, and attorney's fees and costs to Class Counsel in the amounts stated in the Agreement.

Plaintiffs therefore respectfully request that the Court enter final approval of the payment of service payments, fees, costs and expenses from the common fund as set forth in the proposed Order attached as Exhibit 1 to the joint motion for final approval ("Final Approval Order").

## I. THE COURT SHOULD APPROVE THE REQUESTED FUND PAYMENTS.

### A. The Requested Service Payments Are Reasonable and Appropriate.

The Settlement Agreement provides for service payments to the Representative Plaintiff in the amount of ▬▬▬ and the Kentucky Class Plaintiff and Ohio Class Plaintiff in the amounts of ▬▬▬ each. These payments are in addition to the payment they will receive as their *pro rata* share of the Net Settlement Fund, subject to the same *pro rata* calculation based on weeks worked as salary-paid STMs and/or STLs within the relevant period. The Court preliminarily approved those amounts as appropriate in the Preliminary Approval Order [ECF No. 95, pp. 34-35] and there were no objections filed. These service payments are reasonable and appropriate for this class and collective action settlement. (Head Decl., ¶¶ 38-40).

As this Court determined in its Order granting preliminary approval, the "proposed service payments are similar to other collective and class action incentive awards approved by courts in this Circuit." (Order [ECF 95], p. 35) (*citing Salinas v. U.S. Express Enters., Inc.*, No. 1:13-cv-

00245, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000), adopted by 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Osman v. Grube*, Inc., No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (approving $7,500.00 service payment to named Plaintiff in FLSA collective action)).

Given the Court's determination that the requested amounts are appropriate, the lack of objections to the requested amounts, and in consideration of the Representative Plaintiff and Kentucky and Ohio Class Plaintiffs' efforts in working with counsel to investigate the lawsuit, prepare and approve the content of the Complaint, participate in in-depth client interviews in preparation for potential declaration testimony for the motion for conditional certification being drafted before Defendant stipulated to certification, and assist with negotiations and with preparation for both mediations, to achieve the resulting settlement for the class, the requested service payments should be approved. *See Manjunath A. Gokare, P.C. v. Fed. Express Crop.,* No. 2:11-CV-2131-JTF-CGC, 2013 U.S. Dist. LEXIS 203546, at *45 (W.D. Tenn. Nov. 22, 2013) (overruling objections and approving incentive awards of $5,000 each to plaintiffs for their unique contributions to the case.); *Garland v. Memphis-Shelby Cnty. Airport Auth.*, No. 09-2749, 2011 U.S. Dist. LEXIS 159344, at *19 (W.D. Tenn. July 19, 2011) (Mays, J) (granting final award of incentive payment to plaintiff where he was "not a passive, nominal plaintiff, but actively represented the interests of the class throughout this litigation and conferred with his counsel frequently during the settlement negotiations.").

  B. <u>The Fees for Notice and Settlement Administration Should Be Approved</u>

Under the Settlement Agreement, RG/2 Claims will be paid ▮▮▮ for fees and costs of the original, previously completed opt-in notice administration, and ▮▮▮ for fees and costs of the class and collective action settlement notice administration. (Head Decl., ¶ 41) Those amounts are reasonable and were reasonably incurred in this action. *Id.* The Settlement Administrator quoted its fees at a not to exceed amount of ▮▮▮, and has invoiced Plaintiffs for that capped amount for settlement administration fees despite the fact that its fees exceeded that amount. *Id.*

3

The Court should approve the payment of the Settlement Administrator's fees from the common fund settlement as reasonable and appropriate.

    C.  <u>Payment of Attorney's Fees as a Percentage of the Common Fund Is Reasonable</u>

The mandatory prevailing plaintiff's attorney's fees provision of the FLSA and Kentucky and Ohio Law exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. Plaintiffs seek approval of the amount agreed upon by the Parties in the Settlement Agreement (one-third of the common settlement fund) for payment in full of Class Counsel's attorney's fees. (Head Decl., ¶¶ 44-62).

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Garland v. Memphis-Shelby Cnty. Airport Auth.*, 2011 U.S. Dist. LEXIS 159344, at *15 (finding the percentage of fund method to be the appropriate method for calculating attorney's fees). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995) ("[T]he [percentage of the

4

fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (citation and internal quotation marks omitted); *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources.") As recognized by the Ninth Circuit, "the lodestar method does not reward early settlement" and "class counsel should [not] necessarily receive a lesser fee for settling a case quickly." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

As this Court recognized in granting preliminary approval of the settlement, the "one-third contingency fee arrangement reflected in the Settlement Agreement is 'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.' *In re Se. Milk Antitrust Litig.*, No. 2:07-v-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012); *see also Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fees awards in common fund cases ranging from 30% to 33% of the total fund)." (Order [ECF 95], pp. 32-33).

Courts employing the percentage of the fund approach are not required to conduct a cross-check using Class Counsel's lodestar of hours worked times hourly rate.[1] "Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *20-21 (S.D. Ohio Sep. 9, 2016); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary"). However, any attorney's fees awarded from the fund must "be reasonable under the circumstances." *Garland v. Memphis-Shelby Cnty. Airport Auth.*, 2011 U.S. Dist. LEXIS 159344, at *15 *citing Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). In deciding

---

[1] As stated in the Plaintiffs' unopposed motion for preliminary approval ([ECF 88], p. 20, n. 11), if the Court in its discretion required formal briefing or some other submission of information to perform an optional lodestar cross-check, the Plaintiffs requested the opportunity for Plaintiffs to supplement a motion for preliminary or final approval with any briefing or information requested by the Court for *in camera* review.

the reasonableness of a requested fee, a court considers "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Id*. Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1. *Value of the Monetary and Non-Monetary Benefits Provided*

The results justify the fees. Under the Settlement Agreement, every plaintiff will receive a fair and favorable settlement distribution, as will every absent class member (since there were no exclusions). After deduction to pay all fees, costs, and service payment amounts requested, the net settlement payments to the Plaintiffs and class members constitute approximately 320% of total potential back wages if calculated using Defendant's half-time methodology for the maximum possible statutes of limitation, and 100% of total potential back wages using Plaintiffs' preferred time-and-a-half methodology for that same period, based on Plaintiffs' expert's determination of hours worked from the data. As the Court held in its preliminary approval order, "[t]hat is a good result." (Order [ECF 95], p. 32) (*citing Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912 (noting that class action members obtain a "7% to 11% average result" and describing recovery for class members of between 25% and 75% of claimed unpaid wages as "exceptional")).[2]

This settlement compares favorably by analogy to Court-approved "merchandiser" overtime class and collective action settlements. (Head Decl., ¶ 37) (citing *Cikra v. LaMi Products, LLC*, No. 2:15-cv-06166-WB [ECF #50] (E.D. Pa. Nov. 10, 2016) (approving $1,550,000 class and collective action settlement offering the gross average amount of $603.11 per each of 2,570 class members)).

---

[2] *See also Kidd v. Mathis Tire and Auto Service, Inc.*, No. 2:14-cv-02298-JPM-dkv (ECF No. 97) (W.D. Tenn. Aug. 28, 2015) (approving FLSA collective action settlement that provided each collective action member with 125% of their calculated unpaid minimum and overtime wages using the half-time calculation for employees paid commissions).

A recovery of this amount also exceeds the average wage recovery in FLSA cases. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *11-12 (*citing Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 U.S. Dist. LEXIS 20446, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average)).

Further, the settlement provides relief to class members and eliminates the risks that the parties would otherwise bear if this litigation were to continue on for more years. Absent settlement, the parties would have engaged in additional discovery (including written discovery and depositions), and motion practice (class decertification, FLSA collective decertification, dispositive motions on merits and damages issues). This provides value to the class because "this litigation is in the early stages, no formal discovery had been conducted, and no dispositive motions had been filed. Had the parties engaged in formal discovery and filed dispositive motions, this would have increased the cost significantly." *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *21 (S.D. Ohio June 30, 2017).

Finally, Class Counsel negotiated a settlement that is favorable not only as to its monetary consideration, but also to its terms affecting Class Members. For example, this settlement does not require a Class Member to give an overbroad general release.[3] The settlement also comports with the FLSA's opt-in procedure by not requiring any Class Member to release any FLSA claims unless the Class Member affirmatively claimed his or her individually offered FLSA payment in exchange for consenting to join the lawsuit and affirmatively accepting a release of FLSA claims.[4]

---

[3] "As one district court noted, while this kind of 'reciprocal, general release is incontestably a staple of accepted and common litigation practice[, . . .] a[] FLSA action is different.' *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010). Per the *Moreno* Court, '[a] pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation.' This Court could not agree more." *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88 (WLS), 2013 U.S. Dist. LEXIS 156754, at *8-9 (M.D. Ga. Nov. 1, 2013).

[4] Moreover, if a State Law Class Member does not consent to join the litigation and waive FLSA claims, then as to State Law Class Members the release provision provides: "(i) the only claims released are those specified in the State Law Release, as to State Law Class Members, and (ii) the parties agree that the assertion and release of the claims within the State Law Release shall have

Finally, the settlement provides Class Members with a release by Defendants of any claims arising from their participation in the litigation or settlement – thus, for example, protecting them from potential claims for recoupment of previously paid severance based on alleged violation of a prior severance and release agreement, or some other contractual obligation, by joining the case or its settlement.[5]

### 2. *Value of the Services Rendered/Contingency Fee Basis*

Courts frequently find these factors to be intertwined when determining the reasonableness of a percentage of the fund attorney's fee. *See, e.g., Hainey v. Parrott*, No. 1:02-CV-733, 2007 U.S. Dist. LEXIS 98444, at *8 (S.D. Ohio Nov. 6, 2007) ("Value of services on an hourly basis/Whether services were undertaken on a contingent fee basis: As stated, class counsel does not have a regular hourly fee because he typically is compensated on a contingency fee basis. This factor favors the percentage of fund method.")

Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless and until there was a recovery. Thus, Class Counsel bore all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case, considering likely dispositive motion practice and class certification and decertification motion practice – that the investment of substantial attorney time and resources might result in no payment for fees and no recovery of litigation expenses advanced. Class Counsel should be compensated for this risk. *Lonardo,* 706 F. Supp. 2d at 796; *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee").

---

no collateral estoppel, claim splitting, res judicata, waiver, or other claim preclusion effect as to claims not explicitly released herein (including, but not limited to, FLSA claims)."

[5] "[O]ne of the primary purposes of a settlement agreement is to put an end to litigation[,]" and therefore "a settlement typically involves both parties releasing the legal claims that they had against each other relating to the suit as of the date of the settlement." *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 U.S. Dist. LEXIS 34445, at *6-7 (N.D. Ohio Mar. 2, 2018) (citation omitted).

Moreover, while the value of the services rendered would support the 40% contingency fee percentage before additional reimbursement of costs provided in Class Counsel's fee agreement with Plaintiff,[6] Class Counsel has agreed to accept a reduced percentage (33 1/3%) of the common fund for combined attorney's fees and advanced costs. *See, e.g., Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 U.S. Dist. LEXIS 192496, at *9 (W.D. Tenn. May 22, 2012) ("the fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement.") and *Garland v. Memphis-Shelby Cnty. Airport Auth.*, 2011 U.S. Dist. LEXIS 159344, at *17 (finding the requested percentage reasonable where it was less than the contingent fee the firm usually charges in similar cases).

Although a lodestar cross-check is not required, Class Counsel nonetheless represents that an award of attorney's fees in the amount that Defendant agreed to pay in the Settlement Agreement would constitute a lodestar multiplier that falls within the "1.3 to 4.5" range that this Court cited in *In re Regions Morgan Keegan Secs*, No. 2:09-2009 SMH V, 2013 U.S. Dist. LEXIS 205822, at *25 (W.D. Tenn. Sep. 5, 2013) as a range reasonably accepted by courts in complex class action litigation under a different statute. (Head Decl., ¶ 60). *See also Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *14-15 (S.D. Ohio Oct. 17, 2018) (approving fees under percentage of the fund method representing 2.57 multiplier, collecting cases approving multipliers between 2.5 and up to 8.5); *Bailey v. AK Steel Corp.*, Case No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *7 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically ... increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); Newberg on Class Action §

---

[6] Plaintiff's engagement agreement provides for contingency fees at the higher of 40% of total recovery, actual lodestar, or awarded lodestar, in addition to reimbursement of advanced costs and expenses from the recovery that is similarly contingent on the outcome. Head Decl., ¶ 52. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted).

14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

Plaintiffs support this motion with undersigned counsel's declaration summarizing current hourly rates and the range of multipliers within which Plaintiffs' counsel's lodestar falls, which is consistent with (and in some instances more detail than) what this Court has found sufficient to determine approval of attorney's fees paid from a class action settlement fund.[7] Should the Court require any further documentation or testimony regarding Plaintiffs' counsel's fees and costs to be paid from this settlement, however, Plaintiffs respectfully request the opportunity to supplement the record or present any testimony at the hearing on this motion, as directed by the Court.

    4.  *Society's Stake in Rewarding Attorneys Who Produce Class Benefits*

The FLSA is a remedial statute designed to protect the wages of workers, *see A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945), and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011). "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling . . . small claimants to pool their claims and resources." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *68 (N.D. Ohio Sep. 23, 2016) (*quoting In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)). Moreover, "[s]ociety's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals." *Id. (quoting In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, 2013 WL 2155387 at *5 (E.D. Tenn. May 17, 2013)).

Absent a class and collective action, Plaintiffs and the Class Members would most likely lack the resources to litigate a case of this magnitude and would not be able to afford litigating

---

[7] *See, e.g., Garland*, 2011 U.S. Dist. LEXIS 159344, at *16 (Mays, J) (approving class counsel's fees from class action settlement as reasonable based on requested percentage of the fund amount, "[a]lthough the value of the services of Garland's counsel on an hourly basis is not in the record").

pursuit of the sums at issue by paying an attorney an hourly fee win or lose; nor is there any reason to believe any other class members would have been willing to pay to retain counsel on any basis other than a contingency fee arrangement, and would not have been able to retain attorneys with Class Counsel's high level of experience and expertise. *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464, at *9 (S.D. Ohio Mar. 9, 2007) (where claimants would not have been entitled to recover "more than a few thousand additional dollars" and there was no reason to assume that anything other than contingency fee representation would be viable for or even available to the individuals claimants, the value of the services factor supports the reasonableness of the contingency fee percentage).

        5.     *The Complexity of the Litigation*

The FLSA and state wage and hour law claims, defenses, and procedural issues involved in this litigation and its settlement are complex (*see* Section IV(D)(1), supra). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). As the *Swigart* opinion from the Ohio district court recognized in approving settlement of a hybrid FLSA collective action/Ohio state law class action alleging unpaid overtime due to misclassification as exempt:

> Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

*Swigart*, 2014 U.S. Dist. LEXIS 94450, at *18.

        6.     *Professional Skill and Standing of Counsel on Both Sides*

This result required the acquisition and analysis of large amounts of time and payroll data, experience and judgment necessary to mediate a favorable settlement prior to certification, and the efforts of a highly skilled wage and hour attorney with expertise in hospitality and retail manager misclassification cases developed over decades of employment litigation practice. Head Decl. ¶ 4-

16. Litigation of a case like this also requires counsel highly skilled in FLSA collective action and Rule 23 class action law and procedure as well as the specialized issues these cases present. *Id.* Class Counsel possess these attributes, and their contributions added value to the representation of and recovery made available for this Settlement Class consisting of over 200 current and former employees. *Id.*

Courts have commented favorably on Class Counsel's professional skill and standing. (Head Decl., ¶ 7) (citing, *inter alia*, *Acevedo v. BrightView Landscapes, LLC*, No. 3:13-2529, 2017 U.S. Dist. LEXIS 163870, at **32, 53, 61 (M.D. Pa. Oct. 2, 2017) (Class Counsel served as lead counsel in FLSA collective action and multi-state class action wage and hour case challenging company's fluctuating workweek overtime pay policies for Supervisors, resulting in court-approved $6.95 million company-wide settlement; court's order recognized that Class Counsel is "highly skilled in FLSA collective and hybrid actions as seen by their dealings with the court and the results achieved in both negotiating and handling the settlement to date," acknowledged the "skill and efficiency of the attorneys involved in this case," and opined that Class Counsel achieved "an excellent settlement")). That Class Counsel serves as Chapter Editor for the American Bar Association's Fair Labor Standards Act treatise published by BNA Books, Co-Chair for the American Bar Association's Federal Labor Standards Legislation FMLA Subcommittee, and as a frequent faculty presenter on FLSA, mediation, and other employment litigation related topics for nationwide organizations including the American Bar Association, Practising Law Institute, and National Employment Lawyers Association, further attests to Class Counsel's professional skill and standing warranting approval of the requested fee and cost payment. Head Decl., ¶¶ 9-10.

Courts also consider the professional skill and standing of opposing counsel under this factor. Defendants were represented throughout this litigation by Fisher Phillips, one of the country's preeminent management-side labor and employment law firms ranked as a Tier 1 National "Best Law Firm" for its Employment Law, Labor Law, and Labor and Employment

Litigation practices by U.S. News – Best Lawyers®.[8] *See, e.g., Garland v. Memphis-Shelby Cnty. Airport Auth.*, 2011 U.S. Dist. LEXIS 159344, at *17-18 (noting that "Like Garland's counsel, the Airport Authority's counsel is able and respected and does not challenge the fees provided in the Agreement.").

    D.  <u>Payment of Counsel's Advanced and Incurred Costs and Expenses is Reasonable</u>

An award reimbursing Class Counsel for advanced costs and expenses of litigation from the common fund settlement of a class action is reasonable and appropriate. *See, e.g., In re Regions Morgan Keegan Secs*, No. 2:09-2009 SMH V, 2013 U.S. Dist. LEXIS 205822, at *26 (W.D. Tenn. Sep. 5, 2013) (approving reimbursement of counsel's costs for payments to experts, costs of mediation, and other costs including photocopying, travel, and lodging).

    *1.  Advanced Costs Paid to Plaintiffs' Expert*

Defendant contractually agreed to pay, and Class Counsel in this action moves for approval of reimbursement of, costs and all other expenses of litigation, which include fees (capped at ███) paid by Class Counsel to Plaintiff's expert, David Breshears, CPA/CFF of Hemming Morse, who was instrumental in resolving data challenges, calculating damages and exposure models, and presenting calculations and assessments to Defendant's counsel during negotiations. (Head Decl., ¶ 42). Class Counsel paid its expert the total amount of ███ in this action. *Id.*, ¶ 43. That amount was reasonable for the expert's efforts and reasonably incurred in this action. *Id.* Plaintiffs request approval of reimbursement from the settlement fund for the ███ amount billed by, and paid by Class Counsel to, Plaintiffs' expert in this action.

    *2.  Plaintiffs' Counsel's Other Advanced Costs and All Expenses of Litigation*

Again, Defendant contractually agreed to pay, and Plaintiffs in this action move for approval of reimbursement of, Class Counsel's other costs and all other expenses of litigation in the agreed-upon capped amount of ███. Thus, given that Class Counsel to date has advanced litigations costs and expenses in amounts exceeding ███, including filing fees, pro hac vice

---

[8] https://www.fisherphillips.com/firm-awards

fees, service fees, mediator fees, and required mediation travel expenses, the capped amount of ▉▉▉▉ for Plaintiffs' counsel's costs and expenses (exclusive of expert and administrator fees) should be approved as reasonable in this settlement.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this unopposed motion for approval of service payments, Notice and Settlement Administrator fees, and Class Counsel's attorney's fees and advanced costs and expenses in this action.

Respectfully submitted,

/s/ C. Andrew Head
C. Andrew Head
Bethany A. Hilbert
Head Law Firm, LLC
4422 N Ravenswood Ave
Chicago, IL  60640
(404) 924-4151; (404) 796-7338  (Fax)
ahead@headlawfirm.com
bhilbert@headlawfirm.com

*Attorneys for Plaintiffs and the Class/Collective*

## **CERTIFICATE OF CONSULTATION**

  I hereby certify under Local Rule 7.2(a)(1)(B) that as reflected by counsel's signature approving as to form the parties' Settlement Agreement, and multiple communications with Defendant's counsel Jeff Weintraub including telephone and email communications regarding the settlement of this action and settlement approval, I have consulted with Defendant's counsel and Defendant is in agreement with the action (approval of service payments, notice and settlement administrator fees, attorney's fees and costs from this class/collective action settlement) requested by this motion.

                */s/ C. Andrew Head*
                C. Andrew Head

                *One of the Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing has been electronically filed with the United States District Court for the Western District of Tennessee on this 15th day of May, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                                      */s/ C. Andrew Head*
                                                      C. Andrew Head

                                                      *One of the Attorneys for Plaintiffs*