IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| TOREY FITZGERALD, KENNETH MCCOY, and ALAN MOORE, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:17-cv-02251-SHM-cgc |
| v. | ) ) | |
| P.L. MARKETING, INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER**

Before the Court is Plaintiffs' May 15, 2020 Unopposed Motion for Final Approval of Class and Collective Action Settlement Agreement (the "Motion for Final Settlement Approval"). (ECF No. 97.) Also before the Court is Plaintiffs' May 15, 2020 Unopposed Motion for Approval of Service Payments, Attorney's Fees, and Costs (the "Motion for Attorney's Fees and Costs"). (ECF No. 98.)

The Court held a fairness hearing on June 4, 2020, at which it heard arguments by counsel. No one appeared in opposition. For the following reasons, the Motion for Final Settlement Approval is GRANTED. The Motion for Attorney's Fees and Costs is GRANTED.

## I.   Background

This dispute arises from Defendant P.L. Marketing, Inc.'s ("PLM") alleged failure to pay overtime compensation to certain employees.  PLM provides in-store merchandise display work in Kroger Co. ("Kroger") grocery stores.  (ECF No. 97 at 1-2.) Inter alia, PLM conducts store "sets" and "resets."  (Id.) During store sets and resets, PLM employees travel to various Kroger stores and arrange products and pricing on shelves and displays. (Id.)  Two types of PLM employees participate in store sets and resets: (1) Set/Reset Team Members ("STMs") and (2) Set/Reset Team Leads ("STLs").  (Id.)  Until December 2016, PLM classified STMs as salaried employees exempt from federal and state overtime laws.  (Id. at 2.)  Beginning in December 2016, PLM reclassified STMs as hourly employees who are not exempt from federal and state overtime laws.  (Id.)   PLM continues to classify STLs as salaried employees exempt from federal and state overtime laws.  (Id.)

On April 13, 2017, Plaintiff Torey Fitzgerald filed a Complaint in this action (the "Initial Complaint").  (ECF No. 1.)   In the Initial Complaint, Fitzgerald, a PLM employee, alleged that PLM had failed to pay overtime compensation to him and other similarly situated STMs and STLs as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. (Id. ¶ 1.)   Fitzgerald alleged that PLM had incorrectly

classified STMs and STLs as exempt from the federal overtime laws.  (Id. ¶¶ 1, 30.)  Fitzerald sought to represent himself and other similarly situated STMs and STLs in a collective action under the FLSA.  (Id. ¶ 39.)

On November 3, 2017, pursuant to an October 6, 2017 joint stipulation entered into by the parties, this Court conditionally certified the following set of similarly situated plaintiffs for the FLSA collective action asserted in the Initial Complaint:

> Any person who worked for Defendant as a Set/Reset
> Team Member, a Set Team Leader, a Surge Set Team Member
> or Surge Set Team Leader internally classified and/or
> paid or treated by Defendant as exempt from overtime
> pay requirements, and was paid on that basis for one
> or more weeks for that work by salary (not hourly) on
> a pay date occurring within the period beginning three
> (3) years prior to August 18, 2017 through the date of
> judgment.

(ECF No. 42 ¶ 5; ECF No. 50.)  At the same time, and also pursuant to the October 6, 2017 joint stipulation entered into by the parties, this Court approved the distribution of notice and opt-in consent forms to putative members of the collective action. (ECF No. 42 ¶ 6; ECF No. 50.)  The approved notice and opt-in consent forms were distributed and 161 individuals opted in to the collective action.  (ECF No. 97 at 5.)

On May 8, 2018, the parties engaged in a mediation session with a third-party mediator.  (Id. at 3.)  That mediation session was unsuccessful.  (Id.)  On July 10, 2019, the parties engaged

in a second mediation session with the same mediator, during which the parties reached a settlement. (Id. at 4.)

On October 31, 2019, Fitzgerald and Plaintiffs Kenneth McCoy and Alan Moore (collectively, "Plaintiffs" or "Named Plaintiffs") filed, for settlement purposes, the First Amended Complaint (the "Amended Complaint"). (ECF No. 86.) The Amended Complaint alleges three causes of action. First, Plaintiffs allege that PLM failed to pay overtime compensation to Plaintiffs and similarly situated STMs and STLs as required under the FLSA. (Id. ¶¶ 1, 42-53.) Second, Plaintiff Moore alleges that PLM failed to pay overtime compensation to Moore and a putative class of Ohio-based STMs under Ohio's overtime laws. (Id. ¶¶ 2, 54-64.) Third, Plaintiff McCoy alleges that PLM failed to pay overtime compensation to McCoy and a putative class of Kentucky-based STMs under Kentucky's overtime laws. (Id. ¶¶ 3, 65-74.)

On October 31, 2019, Plaintiffs filed a Motion for Preliminary Settlement Approval and the parties' proposed Settlement Agreement. (See ECF Nos. 88, 88-1.) The Settlement Agreement proposes a settlement (the "Settlement") of all claims asserted in the Amended Complaint on behalf of the members of the FLSA opt-in collective action (the "FLSA Collective"), the members of the putative class of Ohio-based STMs (the "Ohio Class"), and the members of the putative class of Kentucky-based STMs (the "Kentucky Class"). (See ECF No. 88-1.) The Settlement

4

Agreement defines the FLSA Collective, the Ohio Class, and the Kentucky Class as:

> FLSA Collective:  All individuals who filed Consents in the Litigation that were not withdrawn as of the July 10, 2019 mediation date, and who work or worked for PLM as Set/Reset/Surge Team Members or Set/Reset/Surge Team Leaders and who were paid as exempt for that work.
>
> Ohio Class:  All individuals reflected on the parties' agreed upon class list as of the July 10, 2019 mediation and who worked for PLM as Set/Reset/Surge Team Members and who were paid as exempt for that work within the period beginning August 18, 2015, through the December 4, 2016 pay date.
>
> Kentucky Class:  All individuals reflected on the parties' agreed upon class list as of the July 10, 2019 mediation and who worked for PLM as Set/Reset/Surge Team Members and who were paid as exempt for that work within the period beginning August 18, 2012, through the December 4, 2016 pay date.

(Id. ¶ 3.)

The Settlement Agreement provides that PLM shall establish a Settlement Fund of $1,575,000.  (Id. ¶ 6.)  The Settlement Fund will first be used to pay attorney's fees, litigation costs and expenses, notice and administration expenses, and service payments to Fitzgerald, Moore, and McCoy.  (Id. ¶¶ 7-10.)  The remaining amount will be distributed pro rata among the members of the FLSA Collective, the Ohio Class, and the Kentucky Class on a point-based system.  (See id. ¶ 10.)  No amount of the Settlement Fund will revert to PLM under any circumstances.  (Id. ¶ 6.)  Pro rata shares from the Settlement Fund will be

distributed to the collective and class members by mailed checks. (Id. ¶ 13.)

The Settlement Agreement provides that the members of the FLSA Collective will release PLM from all wage and hour claims under state and federal law arising out of the allegations stated in the Amended Complaint through July 10, 2019.  (Id. ¶ 15.) The members of the Ohio Class and the Kentucky Class will release PLM from all wage and hour claims under state law arising out of the allegations stated in the Amended Complaint through July 10, 2019.  (Id.)  Fitzgerald, Moore, and McCoy will release PLM from any and all claims arising out of their employment with PLM through the date of the Settlement Agreement.  (Id.)  PLM will release the collective and class members from "any claims it may have against participating settlement members that arise out of their assertion of the claims, joining the litigation, or receiving a settlement payment."  (Id.)

On February 13, 2020, the Court granted Plaintiffs' Motion for Preliminary Settlement Approval.  (See ECF No. 95.)  The Court conditionally approved the Settlement as fair, reasonable and adequate.  (Id. at 39 ¶ 1.)  The Court conditionally certified the Ohio and Kentucky Classes.  (Id. at 39 ¶ 4.)  The Court conditionally approved Moore and McCoy as class representatives (hereafter, the "Class Representatives") for the Ohio Class and the Kentucky Class, respectively.  (Id. at 40

¶ 6.)  The Court approved C. Andrew Head and the Head Law Firm, LLC as class counsel.  (Id. at 40 ¶ 7.)  The Court approved the form and substance of Plaintiffs' proposed class and collective notices and directed that notice of the proposed settlement be provided to the collective and class members.  (Id. at 39-40 ¶¶ 3, 8.)  The Court provided a procedure for collective and class members to request exclusion from the FLSA Collective, the Ohio Class, or the Kentucky Class.  (Id. at 41 ¶ 12.)  The Court scheduled a fairness hearing and provided a procedure for collective and class members to appear at the fairness hearing and be heard in support of, or in opposition to, the Settlement. (Id. at 42-43 ¶¶ 15-16.)

On March 5, 2020, the settlement administrator, RG/2 Claims Administration LLC (hereafter, the "Settlement Administrator"), issued 211 notices of the proposed settlement to the collective and class members in the form and manner approved by the Court in its February 13, 2020 Order.  (Settlement Admin. Decl., ECF No. 97-1 ¶ 13.)  Seven of the 211 notices were returned as undeliverable.  (Id. ¶ 17.)  The Settlement Administrator used a forwarding address and skip-tracing procedures to locate updated addresses for the collective and class members whose notices were returned, and resent notices to those individuals that were not returned.  (Id.)  The collective and class notices

were published on a publicly accessible case settlement website maintained by the Settlement Administrator.  (Id. ¶ 15.)

The deadline for timely exclusion from the FLSA Collective, the Ohio Class, or the Kentucky Class was April 20, 2020.  (ECF No. 95 at 41 ¶ 12; ECF No. 97-1 ¶¶ 13-14.)  No collective or class members requested exclusion.  (ECF No. 97-1 ¶ 18.)  The deadline for the filing of timely objections to the Settlement was May 14, 2020.  (See ECF No. 95 at 42-43 ¶¶ 15-16.)  No collective or class members filed objections.  (ECF No. 97-1 ¶ 19.)

On June 4, 2020, the Court held a fairness hearing, where it heard arguments by counsel for both sides.  (See ECF No. 103.) No one appeared in opposition.

## II.  Jurisdiction

Plaintiffs allege violations of the FLSA.  This Court has subject matter jurisdiction over the FLSA claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

Plaintiffs Moore and McCoy allege violations of Ohio and Kentucky overtime laws, respectively.  This Court has supplemental jurisdiction over the Ohio and Kentucky state law claims under 28 U.S.C. § 1367(a).  Those claims derive from a "common nucleus of operative fact" with Plaintiffs' FLSA claims. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966);

Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016).

## III. Standard of Review

### A.   Collective Action Settlements Under the FLSA

Section 216(b) of the FLSA permits an employee to recover unpaid overtime compensation by suing an employer "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Unlike class actions under Federal Rule of Civil Procedure 23, when an employee sues his employer in a representative capacity under § 216(b), similarly situated plaintiffs choose whether to "opt into" the suit, which is known as a "collective action."  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

The FLSA's overtime compensation provisions are "mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement."  Kritzer v. Safelife Solutions, LLC, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010), and Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945)).  There are two ways in which claims for back wages arising under the FLSA can be settled or compromised.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  First, the Department

9

of Labor can supervise a settlement.  See Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (citing 29 U.S.C. § 216(c)).  Second, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's, 679 F.2d at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).

Before approving a proposed collective action settlement, the court should determine whether the members of the putative collective are similarly situated plaintiffs under the FLSA. See Bredbenner v. Liberty Travel, Inc., Nos. 09-cv-905, 09-cv-1248, 09-cv-4587, 2011 WL 1344745, at *16-17 (D.N.J. Apr. 8, 2011); Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 993-94 (N.D. Ind. 2010).  The court should review the proposed settlement to ensure that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's, 679 F.2d at 1355.

## B.   Class Action Settlements Under Rule 23

"The claims, issues, or defenses of a certified class -- or a class proposed to be certified for purposes of settlement -- may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

Rule 23(a), (b), and (g) set out the criteria for certifying a class action in federal court, including a settlement class. The Rule requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g).  William B. Rubenstein, Newberg on Class Actions ("Newberg") § 3:1 (5th ed. 2020).  A district court must give undiluted, even heightened, attention to Rule 23 protections before certifying a settlement class.  UAW v. Gen. Motors Corp., 497 F.3d 615, 625 (6th Cir. 2007).

Rule 23(e)(2) establishes the standard for the court's approval of a proposed class action settlement.  Under Rule 23(e)(2), the court must review whether the proposed settlement is "fair, reasonable, and adequate after considering whether":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).[1]

### C.   Attorney's Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When parties to a class action seek attorney's fees and costs, they must comply with the following:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find facts and state its legal conclusions under Rule 52(a).

---

[1] Before 2018, Rule 23(e)(2) directed courts to determine whether proposed class action settlements were "fair, adequate, and reasonable," but did not provide a standard for courts to apply. See Fed. R. Civ. P. 23(e)(2) (2017). Historically, courts applied judicially developed standards when deciding whether proposed class action settlements were fair. See Newberg § 13:48; UAW, 497 F.3d at 631 (discussing the Sixth Circuit's traditional multifactor test). Effective December 1, 2018, Rule 23(e) was substantially amended to provide an enumerated "shorter list of core concerns" for courts to focus on when evaluating whether a proposed class action settlement is fair. See Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Id.

"In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 F. App'x 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique circumstances of class actions in general, and of the unique circumstances of the actual cases before them.'" Id. (quoting Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993)). The award of attorney's fees is within the court's discretion. Bowling v. Pfizer, Inc., 102 F.3d 777, 779-80 (6th Cir. 1996).

In exercising their discretion, district courts often address the "Ramey factors":

(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009) (quotation marks and citation omitted); see also Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974).

## IV.   Analysis

### A.   FLSA Collective Action

#### 1.   Similarly Situated Plaintiffs

Members of the FLSA Collective must be similarly situated plaintiffs under the FLSA.  See Bredbenner, 2011 WL 1344745, at *16-17.

The standard for a collective action under the FLSA is "less stringent" than the standard for class certification under Rule 23.  O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584-85 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016).  The Sixth Circuit has not set out "comprehensive criteria for informing the similarly-situated analysis."  Id. at 585.  However, the Sixth Circuit has made clear that, inter alia, plaintiffs may be similarly situated where "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  Id.

The members of the FLSA Collective are current and former STMs and STLs who seek overtime compensation for weeks they worked on set and reset projects while classified as salaried, non-exempt PLM employees.  (See ECF No. 97 at 12.)  They allege common violations of the FLSA: PLM's policy of classifying STMs and STLs as salaried, non-exempt employees.  (Id.)  The members of the FLSA Collective are similarly situated under the FLSA.

14

2.   **Settlement Approval**

The Settlement must be "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's, 679 F.2d at 1355.

The Settlement resolves a bona fide dispute over FLSA provisions. The parties disputed whether PLM properly classified STMs as exempt from the FLSA's overtime provisions before December 2016, and whether PLM's continued classification of STLs as exempt is correct. (See ECF No. 97 at 12; see also Answer, ECF No. 29 at 9 ¶¶ 8-10.) The parties disputed whether the job duties of STMs and STLs were sufficiently similar to satisfy the standard for a collective action by "similarly situated plaintiffs" under the FLSA. (See ECF No. 97 at 12; ECF No. 29 at 1 ¶ 1.) They disputed whether overtime damages for the members of the FLSA Collective should be calculated using the "half-time" method or the "time-and-a-half" method, both of which find colorable support in case law. (See ECF No. 97 at 13); see also Mitchell v. Abercrombie & Fitch, Co., 428 F. Supp. 2d 725, 732-734 (S.D. Ohio 2006) (noting "[t]he FLSA generally requires employees to be paid at a rate of one and one-half times their 'regular rate' for hours worked in excess of 40 in one week," but that the Supreme Court and the Sixth Circuit have approved an alternative "fluctuating workweek method of calculating an employee's 'regular rate'" that would result in

15

overtime payments at a rate of one-half the employee's regular pay) (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 (1942), and Highlander v. K.F.C. Nat'l Mgmt. Co., 805 F.2d 644, 647-48 (6th Cir. 1986)).

The Settlement provides for a Settlement Fund of $1,575,000. (ECF No. 88-1 ¶ 6.)   The Settlement is fair and reasonable. "Courts consider several factors when determining whether a proposed FLSA settlement is fair and reasonable: (1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of plaintiff's success on the merits; and (5) the public interest in settlement." Clevenger v. JMC Mech., Inc., No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (citing Padilla v. Pelayo, No. 3:14-cv-305, 2015 WL 4638618, at *1 (S.D. Ohio Aug. 4, 2015), and UAW, 497 F.3d at 631).

Each of those factors supports settlement.   There are no concerns about fraud or collusion.   The Settlement is the product of three years of contested litigation and two mediation sessions with a respected third-party mediator.   (ECF No. 97 at 2-4, 13-14; Class Counsel Decl., ECF No. 97-2 ¶¶ 17-24.)   The litigation was complex.   It presented difficult legal questions about whether PLM's classifications were correct and what measure of damages would apply to Plaintiffs' claims.   (See ECF No. 97 at

12-13.)   Due to substantial gaps, discrepancies, and omissions in PLM's payroll recordkeeping during the period covering the FLSA Collective's claims, the Settlement involved difficult issues of data extrapolation requiring expert review.  (ECF No. 97 at 3; ECF No. 97-2 ¶¶ 21, 23.)

The parties engaged in significant fact discovery that led to the production of, _inter alia_, PLM's personnel policies, the personnel files of the members of the FLSA Collective, timesheet records, mileage reimbursement records, car allowance records, and bonus records.  (ECF No. 97-2 ¶ 20.)  Plaintiffs' success at trial would not have been assured.  There were contested legal issues about liability and damages.  (ECF No. 97 at 12-13.) There were contested factual issues about the number of hours for which Plaintiffs would be owed overtime compensation.  (ECF No. 97-2 ¶ 22.)  Public policy favors settlement of collective actions.  See _Barnes v. Winking Lizard, Inc._, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019) (citing _Hainey v. Parrott_, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)).  The Settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

**B.   Ohio and Kentucky Class Actions**

**1.   Certification**

The first issue is certification of the Ohio and Kentucky Classes (collectively, the "Classes").  Fed. R. Civ. P. 23(c)(1).

Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g).

Rule 23(a) requires a party seeking class action certification to demonstrate that the proposed class and class representatives meet the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Courts consider two additional, implicit criteria: whether the class is definite or ascertainable and whether the class representatives are members of the class. Newberg § 3:1.

The Classes meet the requirements of Rule 23(a). They are sufficiently numerous. The Ohio Class has 35 members. (ECF No. 97-2 ¶ 28.) The Kentucky Class has 48 members. (Id.) They are small classes, but not too small to satisfy the numerosity requirement, particularly because the members of the Classes are geographically dispersed and may have claims that are too small to justify individual litigation. (See ECF No. 95 at 17-19.)

Rule 23(a)'s other requirements are easily satisfied. The Classes are definite. The members of the Classes are known. (See ECF No. 88-1 at 15-18.) The Class Representatives are members of their respective Classes. (See ECF No. 86 ¶¶ 21-22.) The members of the Classes present common questions of law and

18

fact about whether PLM misclassified them as salaried, non-exempt employees.  (See id. ¶¶ 54, 65.)  Class Representatives' claims are typical of the claims of the members of the Classes.  (See id.  ¶¶ 54-74.)    Moore   and   McCoy   are   adequate   class representatives.  They do not have conflicts of interest with the class members.  They seek the same relief based on the same legal theory.

A case must fit at least one Rule 23(b) category to be maintained as a class action.  Fed. R. Civ. P. 23(b).  Plaintiffs contend that this action fits category 23(b)(3).  (See ECF No. 97 at 11-12.)  A Rule 23(b)(3) class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

The Classes meet the requirements of Rule 23(b)(3).  The Classes' common issues predominate over individual issues. Plaintiffs allege that PLM engaged in the same course of illegal conduct for all members of the Classes by misclassifying them as exempt from Ohio and Kentucky overtime laws.  (See ECF No. 86 ¶¶ 54-74.)  Although there might be individualized damages issues given the data extrapolation necessary to calculate the overtime

pay due to each individual member of the Classes (see ECF No. 97 at 2-4), the common questions predominate.  A class action is the superior form of adjudicating the Classes' claims. Plaintiffs allege a common course of wrongful conduct.  It would not be economically feasible for the members of the Classes to pursue individual claims.

Rule 23(g) provides that "a court that certifies a class must appoint class counsel."  When only one applicant seeks appointment as class counsel, a court should consider the work counsel has done in the case, counsel's experience, counsel's knowledge of the applicable law, and the resources class counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

C. Andrew Head and the Head Law Firm, LLC seek appointment as class counsel.  After considering the 23(g)(1)(A) factors, the Court approved Head and the Head Law Firm, LLC as class counsel in its February 13, 2020 Order granting Plaintiffs' Motion for Preliminary Settlement Approval.  (See ECF No. 95 at 25-27, 40.)  For the reasons stated in that Order, Head and the Head Law Firm, LLC (hereafter, "Class Counsel") are adequate class counsel under Rule 23(g).  The Classes meet the certification requirements of Rule 23.

### 2.   Settlement Approval

The Court must determine whether the Settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

A court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Court held a fairness hearing on June 4, 2020.  (See ECF No. 103.)   Named Plaintiffs, Class Counsel, PLM representatives, and PLM's counsel were present.  (See id.)  The Court heard arguments from counsel on both sides about whether the Settlement is fair, reasonable, and adequate.   The members

of the FLSA Collective and the Classes were informed of the fairness hearing's date, time, and location in settlement notices issued by the Settlement Administrator in March 2020.[2]  (See ECF No. 97-1 ¶ 13; see also ECF No. 88-2 at 10-11; ECF No. 88-3 at 8-9.)  No member of the collective or classes filed opposition or appeared in opposition to the Settlement.

The Settlement provides for a Settlement Fund of $1,575,000. (ECF No. 88-1 ¶ 6.)  The Settlement meets the requirements of Rule 23(e)(2).  Class Representatives and Class Counsel have adequately represented the Classes.  Class Representatives assisted in the litigation by participating in client interviews and conferences with Class Counsel and by providing relevant documents.  (See ECF No. 97-2 ¶¶ 38-39.)  Class Counsel did significant work investigating Plaintiffs' claims, developing Plaintiffs' legal theories, participating in fact discovery with PLM, directing expert review of PLM's employee data, mediating the case, and negotiating the Settlement Agreement.  (See id. ¶¶ 20-25, 46-49.)  Class Counsel has substantial experience with

---

[2] The fairness hearing was originally scheduled as an in-person hearing.  (ECF No. 96.)  Because of the current health emergency, the Court conducted the hearing by videoconference instead.  (ECF No. 101.)  A telephone number was posted to the Court's publicly available docket for use by members of the collective or classes to appear in support of, or in opposition to, the Settlement.  (See id.)

complex wage and hour litigation and brought that experience to bear.  (See id. ¶¶ 4-16.)

The Settlement Agreement was negotiated at arm's length. It was reached after substantial discovery and adversarial negotiations that lasted several years.  (See id. ¶¶ 19-24.)  It is the product of two mediation sessions with a respected third-party mediator.  (Id.)  At the fairness hearing, counsel from both sides represented that the terms of the Settlement were vigorously debated.  There are no concerns about fraud or collusion.

The relief provided for the Classes is adequate.  The costs, risks, and delay of trial would have been substantial.  Difficult legal questions about liability and damages and factual questions about data extrapolation would have been presented at trial. Plaintiffs' success would not have been assured.  Even if Plaintiffs succeeded, trial would not likely have occurred for several more years, and an appeal might have followed. Plaintiffs avoid an uncertain and delayed outcome by settling. The Settlement is favorable to Plaintiffs.  The Settlement provides for a Settlement Fund of $1,575,000.  (ECF No. 88-1 ¶ 6.)  It provides Plaintiffs with "100% of [their] total potential back wages" using Plaintiffs' preferred damages calculation, and 320% of their total potential back wages using PLM's preferred damages calculation.  (ECF No. 97-2 ¶ 28.)

23

The distribution method is effective.  "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  Newberg § 13:53.  Ten days after the entry of this Order, the Settlement Administrator will pay the claims of the members of the Classes.  (See ECF No. 88-1 ¶ 13.)  The settlement distribution will be made in the form of mailed checks.  (Id.)  Uncashed check funds will be redistributed to participating class members pro rata.  (Id.) The distribution method is simple and direct.

The terms of Plaintiffs' proposed award of attorney's fees, as discussed infra, see section IV.C.1, is appropriate.  The parties have identified no agreements made in connection with the Settlement that would conflict with or supplement the Settlement Agreement.

The Settlement Agreement treats class members equitably relative to one another.  It apportions settlement awards to members of the FLSA Collective, the Ohio Class, and the Kentucky Class using a point-based system that weights individual collective and class members' awards by the number of weeks worked as an STM or STL during the relevant time while accounting for: (1) the additional commitment undertaken by the opt-in members of the FLSA Collective as compared to absent members of the Ohio Class and the Kentucky Class; (2) the greater risks at

trial for members of the Ohio Class and the Kentucky Class as compared to members of the FLSA Collective; (3) the availability of liquidated damages under the FLSA and Kentucky overtime law, but not under Ohio overtime law; and (4) additional executive exemption arguments PLM could make at trial about the STL members of the FLSA Collective. (See ECF No. 88-1 ¶ 10.) The proposed allocations are fair. The Settlement is fair, reasonable, and adequate.

### C.   Attorney's Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Plaintiffs seek approval for attorney's fees, service payments for the Named Plaintiffs, and other costs. (ECF No. 98.) The procedural requirements of Rules 23(h) and 54(d)(2) are met. Plaintiffs have moved for attorney's fees and costs. (Id.) In the Court-approved class notice, the Settlement Administrator informed the class members that Plaintiffs would seek fees and costs and specified the amounts they would seek. (Id. at 2.) No one has objected to the requested fees and costs.

#### 1.   Attorney's Fees

A district court has discretion to choose between the percentage-of-the-fund method and the lodestar method when awarding attorney's fees. Van Horn, 436 F. App'x at 498. "The

lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516. The court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" Van Horn, 436 F. App'x at 498 (quoting Moulton, 581 F.3d at 352).

In the Sixth Circuit, the court may base its fee award on the percentage-of-the-fund calculation and cross-check it with the lodestar method. See Bowling, 102 F.3d at 780. The "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund')." Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). The percentage-of-the-fund method is appropriate in this case. The Court will cross-check it with the lodestar method.

The Settlement provides for a Settlement Fund of $1,575,000. (ECF No. 88-1 ¶ 6.) Class Counsel request $525,000 in attorney's fees, equal to one-third (33 1/3%) of the gross amount of the Settlement Fund. (ECF No. 98 at 1, 4-13; ECF No. 97-2 ¶ 44.) That fee is "reasonable under the circumstances." Moulton, 581 F.3d at 352. It accords with general practice in common fund class action settlements. See In re Se. Milk Antitrust Litig., No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33.33 percent

attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); <u>Gokare v. Fed. Express Corp.</u>, No. 2:11-cv-2131, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund).

The <u>Ramey</u> factors support approving the fee. The value of the benefit to the Classes is substantial. The members of the Classes will receive cash payments equal to 100% of their total potential back wages under Plaintiffs' preferred damages calculation. (<u>See</u> ECF No. 97-2 ¶ 28.) As discussed <u>infra</u> in the lodestar cross-check, the value of Class Counsel's services on an hourly basis is reasonable. Class Counsel took this case on a contingent fee basis. Society benefits by encouraging counsel to take on difficult class actions. The case was legally and factually complex. Counsel for both sides are able and respected.

The lodestar cross-check supports approving the fee. The lodestar is "the product of reasonable hours times a reasonable rate." <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986). Lodestar multipliers may be applied to account for the risk that counsel assumes in undertaking a case, the quality of the work product, and the

public benefit achieved.  Rawlings, 9 F.3d at 516.  In wage and
hour collective and class actions, lodestar multipliers between
1 and 3 are common.  See Arledge v. Domino's Pizza, Inc., No.
3:16-cv-386, 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018)
(approving award of attorney's fees in wage and hour collective
and class action at a 2.57 lodestar multiplier); Castillo v.
Morales, Inc., No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D.
Ohio Dec. 22, 2015) (approving award of attorney's fees in wage
and hour collective and class action at a lodestar multiplier of
approximately 2.5, which "is typical of lodestar multipliers in
similar cases").

    Class Counsel have submitted their hours and hourly rates
for this litigation.  (ECF No. 102.)  Class Counsel devoted a
total of 606 hours to the case.  (See id. ¶ 3.)  Class Counsel's
hourly rates range from $325 to $600.  (See id.)  The hours and
rates are reasonable.  The resulting lodestar is $284,887.  (See
id.)  Class Counsel requests an attorney's fee of $525,000.  (ECF
No. 98 at 1, 4-13; ECF No. 97-2 ¶ 44.)  The requested fee yields
a lodestar multiplier of 1.84.  That multiplier is reasonable.
It reflects a good result achieved in a contingency fee case
where Class Counsel shared with Plaintiffs the risk of
nonrecovery.  It accords with multipliers commonly awarded in
other class actions.  See Newberg § 15:87 ("Empirical evidence
of multipliers across many cases demonstrates that most

multipliers are in the relatively modest 1-2 range."). Class Counsel's requested attorney's fee of $525,000, equal to one-third of the gross amount of the Settlement Fund, is reasonable.

### 2. Service Payments

Incentive awards are appropriate in some class actions. See Hadix v. Johnson, 322 F.3d 895, 897-98 (6th Cir. 2003). Within this Circuit, district courts have recognized that, "where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled . . . by virtue of class membership alone." Lonardo, 706 F. Supp. 2d at 787.

The Settlement Agreement provides a payment of $7,500 to Fitzgerald for his service as named Plaintiff for the FLSA Collective and payments of $2,500 each to Moore and McCoy for their service as Class Representatives for the Ohio Class and the Kentucky Class, respectively. (See ECF No. 88-1 ¶ 8.) Those service payments are appropriate. Named Plaintiffs substantially assisted in the litigation by participating in client interviews and conferences with Class Counsel and by providing relevant documents. (See ECF No. 97-2 ¶¶ 38-39.) They actively represented the interests of the collective and classes. The service payments Named Plaintiffs seek are similar to other collective and class action incentive awards approved by courts

in this Circuit.  See, e.g., Salinas v. U.S. Xpress Enters.,
Inc., No. 1:13-cv-00245, 2018 WL 1477127, at *10 (E.D. Tenn.
Mar. 8, 2018) (collecting cases in which courts approved service
payments to named plaintiffs between $7,500 and $10,000), adopted
by 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); Osman v. Grube,
Inc., No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May
4, 2018) (approving $7,500 service payment to named plaintiff in
FLSA collective action).  The requested service payments are
appropriate and reasonable.

### 3.   Other Costs

A court may award "reasonable . . . nontaxable costs that
are authorized by law or by the parties' agreement."[3]  Fed. R.
Civ. P. 23(h).  "[N]ontaxable costs are those reasonable expenses
that are normally charged to a fee paying client."  Newberg
§ 16:5; see also In re Cardizem CD Antitrust Litig., 218 F.R.D.
508, 534-35 (E.D. Mich. 2003) (in a common fund class action,
awarding costs that were "the type routinely billed by attorneys
to paying clients in similar cases") (citing In re Synthroid
Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001)).

Class Counsel request awards of: (1) $29,750 to the
Settlement Administrator for the costs of the previously
completed FLSA Collective opt-in notice administration and the

---

[3] Nontaxable costs are costs that cannot be taxed to the opposing
party under 28 U.S.C. § 1920.  See Newberg §§ 16:2, 16:5.

class and collective settlement notice administration; (2) $25,937.87 to Class Counsel for advanced costs paid to Plaintiffs' data extrapolation expert; and (3) $15,000 to Class Counsel for advanced litigation costs and expenses, "including filing fees, pro hac vice fees, service fees, mediator fees, and required mediation travel expenses." (ECF No. 98 at 3-4, 13-14.)

Class Counsel's requested costs are reasonable. The Settlement Agreement contemplates them. (See ECF No. 88-1 ¶¶ 7, 9.) The costs requested are the type typically billed by attorneys to paying clients. See, e.g., Johnson v. W2007 Grace Acquisition I, Inc., No. 13-cv-2777, 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015) (awarding expenses in class action for "research costs, expert fees, and administrative costs"). The requested costs are reasonable.

## V.   Conclusion

For the foregoing reasons, the Motion for Final Settlement Approval is GRANTED. The Motion for Attorney's Fees and Costs is GRANTED. The Court ORDERS that:

1.   The following FLSA Collective is CERTIFIED for final settlement purposes only:

> All individuals who filed Consents in the Litigation that were not withdrawn as of the July 10, 2019 mediation date, and who work or worked for PLM as Set/Reset/Surge Team Members or Set/Reset/Surge Team Leaders and who were paid as exempt for that work.

2.   The  following  Classes  are  CERTIFIED  for  final settlement purposes only:

Ohio Class:  All individuals reflected on the parties' agreed  upon  class  list  as  of  the  July  10,  2019 mediation  and  who  worked  for  PLM  as  Set/Reset/Surge Team Members and who were paid as exempt for that work within  the  period  beginning  August  18,  2015,  through the December 4, 2016 pay date.

Kentucky Class:   All  individuals  reflected  on  the parties'  agreed  upon  class  list  as  of  the  July  10, 2019  mediation  and  who  worked  for  PLM  as Set/Reset/Surge  Team  Members  and  who  were  paid  as exempt for that work within the period beginning August 18, 2012, through the December 4, 2016 pay date.

3.   Plaintiff  Moore  is  appointed  representative  for  the Ohio Class.

4.   Plaintiff  McCoy  is  appointed  representative  for  the Kentucky Class.

5.   Andrew C. Head and the Head Law Firm, LLC are appointed Class Counsel.

6.   The  Settlement  provides  for  a  Settlement  Fund  of $1,575,000.  That amount is approved.  The Settlement is fair, reasonable,  and  adequate  pursuant  to  the  FLSA  and  Federal  Rule of  Civil  Procedure  23(e)(2).   The  Settlement  Agreement  is incorporated  into  this  Order  and  finally  approved  in  its entirety.

7.   The  record  shows  that  settlement  notices  have  been distributed  to  the  members  of  the  FLSA  Collective  and  the  Classes in  the  manner  approved  in  the  Court's  February  13,  2020  Order

granting Plaintiffs' Motion for Preliminary Settlement Approval. The notices distributed: (1) constitute the best practicable notice under the circumstances; (2) constitute notice that was reasonably calculated, under the circumstances, to apprise all members of the FLSA Collective and the Classes of the pendency of this litigation, the terms of the Settlement, their right to object to the Settlement, their right to exclude themselves from the FLSA Collective or the Classes, and their right to appear at the June 4, 2020 fairness hearing; (3) constitute due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (4) meet the requirements of the Federal Rules of Civil Procedure and due process.

8.   No member of the FLSA Collective or the Classes has requested exclusion from the FLSA Collective or the Classes.

9.   No member of the FLSA Collective or the Classes has objected to the Settlement.

10.   Each member of the FLSA Collective and the Classes is bound by this Order, including, without limitation, the release of claims as set forth in the Settlement Agreement.

11.   PLM is bound by this Order, including, without limitation, the release of claims as set forth in the Settlement Agreement.

12.   The parties are directed to implement and consummate the Settlement according to the terms and provisions of the

Settlement Agreement, including but not limited to the establishment of the Settlement Fund.

13. PLM will pay into the Settlement Fund the sum of $1,575,000.

14. Plaintiffs' claims and the claims of the FLSA Collective and the Classes against PLM are DISMISSED WITH PREJUDICE.

15. Class Counsel is awarded attorney's fees in the amount of $525,000, equal to one-third (33 1/3%) of $1,575,000, the gross amount of the Settlement Fund, to be paid from the Settlement Fund.

16. Class Counsel is awarded $40,937.87 in costs for advanced expert fees and litigation expenses, to be paid from the Settlement Fund.

17. Plaintiff Fitzgerald is awarded a service payment in the amount of $7,500, to be paid from the Settlement Fund.

18. Plaintiffs Moore and McCoy are awarded service payments in the amount of $2,500 each, to be paid from the Settlement Fund.

19. The Settlement Administrator is awarded $29,750 for the costs of the previously completed FLSA Collective opt-in notice administration and the class and collective settlement notice administration, to be paid from the Settlement Fund.

20.  The   Court   retains   continuing   and   exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Settlement, and this Order.

So ordered this 2nd day of July, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE